**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

AILEEN LOPEZ                         :
                                     :    No.
   v.                  :
                                     :    **JURY TRIAL DEMAND**
REFOCUS EYE HEALTH OF PA, P.C.:
_____

**CIVIL ACTION COMPLAINT**

COMES NOW, Plaintiff, by counsel, and complains of defendant as follows:

JURISDICTION

1. This matter has federal jurisdiction pursuant to the Family and Medical Leave Act of 1993 (hereinafter "FMLA"), 29 U.S.C. Section 2601, et seq., and the Emergency Paid Sick leave Act of the Families First Coronavirus Response Act, Division E, Section 5102, et seq. of Public Law No. 116-127(03/18/20200 (hereinafter "EPSL")

PARTIES

2. Plaintiff Aileen Lopez resides at 4316 Cloud Street, Philadelphia, PA 19124.

3. Defendant, Refocus Eye Health of PA, P.C., is a professional corporation with a place of business located at 5001 Frankford Avenue, Philadelphia, PA 19124.

4. On or about January 12, 2012, plaintiff commenced Employment with defendant as a Phone Operator.

5. Defendant employs 50 or more people within a 75 mile radius of plaintiff's work site which is located at 5001 Frankford Avenue, Philadelphia, PA 19124.

6. Defendant employs less than 500 people.

7. On May 14, 2020, plaintiff felt ill when she woke up so she called out sick from her employment with defendant.

8. On May 14, 2020, plaintiff went to see her primary doctor at GPHA Frankford Health Center and complained of symptoms including fever, headaches, runny nose, stomach problems and malaise.

9. Given her symptoms indicated that she possibly suffered from COVID-19 during the start of the COVID-19 pandemic, her primary physician directed her to self-quarantine and to be tested for COVID-19.

10. On May 14, 2020, plaintiff scheduled an appointment for COVID-19 testing to take place on May 19, 2020 at a facility recommended by her physician.

11. Later on May 14, 2020, plaintiff notified her manager, Dawn Haberle that she was directed by her doctor to self-quarantine until at least when her test results came back, because she was suffering from symptoms of COVID-19 and was suspected of possibly suffering from COVID-19.

12. Thus plaintiff notified defendant that she would be on leave from work for more than 4 consecutive days because she was suffering symptoms of a health condition, and was directed by a physician to self-quarantine and undergo testing to determine if she was suffering from COVID-19— a serious health condition.

13. Plaintiff provided ample notice to defendant to alert defendant that she was requesting FMLA protected leave.

14. Plaintiff provided ample notice to defendant to alert defendant that she was requesting leave pursuant to the EPSLA while due to a doctor's recommendation that she self-quarantine.

15. Plaintiff's test results came back negative for COVID-19 on May 26, 2020 (12 days after her leave commenced), but she continued to suffer from symptoms including headaches runny nose and stomach problems and fever.

16. The continuing symptoms reported by the plaintiff to her physician caused her physician to believe that plaintiff's negative test results for COVID-19 could possibly have been a false negative.

17. In an abundance of caution, on or about May 26, 2020, plaintiff's physician directed plaintiff to undergo a second test to rule out COVID-19 and directed her to remain on self-quarantine.

18. Notwithstanding her negative COVID-19 results, plaintiff continued to be disabled from work due to her symptoms which also indicated a serious health condition.

19. During this entire time period, plaintiff maintained regular contact with defendant and advised them of all extension to her leave.

20. Plaintiff's second test was delayed several times due to no fault of her own, and on June 11, 2020, she was notified that the test was rescheduled for June 16, 2020.

21. On Friday June 12, 2020, Ms. Haberlie told plaintiff that if she did not return to work by June 15, 2020, she would be terminated.

22. Plaintiff noted that her test was rescheduled for June 16, 2020 and Ms. Haberlie suggested she go to a different place to be tested, but plaintiff said that she would follow the directives of her doctor based upon her health insurance coverage.

23. When plaintiff was unable to return on June 15, 2020, Ms. Haberlie notified plaintiff that her job with defendant was terminated.

24. At all times between May 14, 2020 and June 15, 2020, plaintiff was on FMLA protected leave.

25. Defendant never requested an FMLA certification from plaintiff despite that it was on notice that plaintiff had requested FMLA protected leave.

26. In the one year prior to May 14, 2020, plaintiff worked in excess of 1250 hours for defendant and thus was qualified to take FMLA protected leave for up to 12 weeks.

27. Furthermore, plaintiff had not exceeded 12 weeks of FMLA protected leave in 12 months prior to May 15, 2020.

28. Plaintiff's treating doctors were health care providers as defined by the FMLA.

29. Plaintiff was at all times on a plan of continuing treatment by her health care providers for her aforementioned serious health condition.

30. Plaintiff provided notice, to defendant, of her need for FMLA protected leave as soon as practicable as required by the FMLA.

31. Defendant acted by and through its agents who had authority to terminate the employment of plaintiff.

32. Plaintiff was unlawfully terminated by defendant in violation of the FMLA, because plaintiff notified defendant that she was unable to return to work, yet defendant insisted that plaintiff return before she was cleared by her physician.

33. Defendant's actions of insisting upon plaintiff's early return from her FMLA protected leave interfered with plaintiff's right to take FMLA leave.

34. As a direct result of her unlawful termination, plaintiff has suffered and will continue in the future to suffer actual damages in the form of lost pay, lost benefits and other financial losses.

35. Plaintiff has engaged and will in the future engage in great efforts to mitigate her damages by searching for new employment, but she has to date and may in the future be unsuccessful in her efforts to find equivalent employment.

36. Plaintiff is entitled to recover liquidated damages in an amount equal to actual damages because defendant and its agents intentionally, and/or in bad faith, violated the FMLA.

37. Plaintiff is entitled to recover reasonable attorneys' fees and costs associated with the prosecution of this lawsuit.

38. Plaintiff is entitled to reinstatement of her employment.

39. Section 5102 of the EPSLA requires defendant to pay plaintiff for 80 hours of sick time caused when she was unable to work due to the effects of COVID-19 including self-quarantine recommended by her physician.

40. Defendant did not pay plaintiff for the first 80 hours of her sick time caused when she was unable to work due to her self-quarantine as set forth herein above.

## COUNT 1—
## FMLA INTERFERENCE

41. Plaintiff repeats paragraphs 1-40 as if more fully set forth herein.

42. Defendant violated the FMLA by interfering with plaintiff's FMLA rights by unlawfully demanded her return from FMLA protected leave before she was released to return to work by her physician.

43. Defendant's interference with plaintiff's ability to return to work resulted in her unlawful termination from employment.

44. Plaintiff seeks damages caused by the loss of her job and other relief noted herein above.

## COUNT 2—
## VIOLATION OF SECTION 5102 OF THE EPSLA

45. Plaintiff repeats paragraphs 1-44 as if more fully set forth herein.

46. Section 5102 of the FFCRA requires defendant to pay plaintiff for 80 hours of sick time caused when she was unable to work due to the effects of COVID-19.

47. Plaintiff was a member of the class for whose especial benefit the EPSLA was enacted because she tested positive for COVID-19 and had to self-quarantine and was unable to work as a result.

48. The EPSLA created a right for plaintiff as a member of this class to take paid sick leave from her work with defendant BSL for up to 80 hours.

49. It is implicit in the EPSLA that the legislature intended to create a remedy for members of plaintiff's class to enforce payment for unpaid sick leave due to them pursuant to Section 5102 of the EPSLA in a court of law because the legislature did not provide any administrative remedy that would secure the intent to make the entire statute be effective and certain.

50. Said intent was expressed in Section 5104 of the EPSLA which prohibits employers from taking adverse action against employees who take leave.

51. Furthermore, the relief provided by Section 5105 of the EPSLA is incomplete because it is limited to fines and imprisonment of the employer pursuant to the Fair labor Standards Act of 1938 presumably by the U.S. Department of Labor.

52. This punishment of the wrongdoer fails to enforce actual payment to the class member for sick leave that is due.

53. Giving a right without a remedy could not have been intended by the legislature.

54. Accordingly, because the statutory remedy in section 5105 of the EPSLA does not regulate the requirement for plaintiff to receive the mandated 80 hours of paid sick time, a right of action under 5102 is implied.

55. This implied right of action advances the purpose of Section 5102 of the EPSLA by ensuring that plaintiff received all of the paid sick leave to which she is entitled pursuant to the statute in that the EPSLA was enacted to help persons such as the plaintiff who are rendered unable to work due to COVID-19 and who suffer lost pay as a result.

56. This purpose of the EPSLA is set forth in the introduction to the bill which sets forth in part that ". . . [t]his bill responds to the COVID-19 . . . outbreak by providing paid sick leave . . ." Public Law No. 116-127 (03/18/2020).

57. The purpose of the EPSLA is also set forth in Section 5102 which states in part that the 80 hours of paid sick time is ". . . available immediately for use if the employee . . . has been advised by a health-care provider to self-quarantine . . ." Section 5102 of the FFCRA.

58. The purpose of the EPSLA is also set forth in Section 5110 which states in part that ". . . [e]mployers must pay up to . . . $511 per day, and $5,110 in aggregate, for paid sick time

used by an employee [such as the plaintiff herein] who experiences symptoms of COVID-19 or is required or advised to self-quarantine." Section 5110 of the FFCRA.

59. Defendant owes plaintiff at 80 hours of unpaid sick leave which defendant unlawfully failed to pay.

60. As a result of defendant's nonpayment of the paid sick time due to her, plaintiff was caused to suffer other financial harm and emotional distress.

61. Defendant's management official, Ms. Haberle, acted willfully and either knew that her conduct violated the EPSLA or showed reckless disregard for the matter of whether her conduct violated the EPSLA.

62. Defendant is vicariously liable for the unlawful actions of its employees that were in violation of the EPSLA.

WHEREFORE, plaintiff demands that judgment be entered in her favor on Count 1 against defendant for lost pay and other financial losses, liquidated damages, reasonable attorneys' fees and court costs, reinstatement of employment and any other relief that this Honorable Court deems to be fair and proper, and plaintiff demands that judgment be entered in her favor on Count 2 against defendant for lost sick pay, emotional pain and

suffering, punitive damages and any other relief that this Honorable Court deems to be fair and proper.

/s/ Samuel A. Dion
_____
Samuel A. Dion, Esq.
Dion & Goldberger
1845 Walnut Street
Suite 1199
Philadelphia, PA 19103
215-546-6033
Fax: 215-546-6269
Email: samueldion@aol.com
Attorneys for Plaintiff